Commonwealth *v.* Revty, Appellant.

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Timothy J. Sullivan, Jr.,* Assistant Public Defender, with him *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, October 4, 1972:

On January 4, 1956, appellant Peter Revty stabbed Winston Hollis to death in the dining room of the Western Penitentiary where both men were inmates. Four days earlier, Hollis had beaten the appellant badly during an altercation in the Penitentiary auditorium, after which the appellant spent three days fashioning a knife out of a soup ladle in preparation for their next confrontation. When appellant and Hollis met in the dining room, words were spoken, fighting ensued, and the appellant stabbed Hollis four times causing his death.

The appellant was indicted on charges of murder and voluntary manslaughter. The trial commenced on September 24, 1956, and on September 28, 1956, the jury returned a verdict of guilty of murder in the first degree, recommending a sentence of life imprisonment. Appellant was so sentenced on July 18, 1957. Also on that date, appellant moved for a new trial, alleging that remarks by the District Attorney were prejudicial and that the trial judge incorrectly instructed the jury on voluntary manslaughter. The motion was denied and no appeal was taken.

On April 3, 1968, appellant filed a petition pursuant to the Post Conviction Hearing Act[1] alleging incompetent counsel, obstruction of his right to appeal, and the abridgment of a retroactive right. After a hearing at which appellant had counsel, the petition was dismissed in an opinion dated May 8, 1969. As of this date, no appeal has been taken from the ruling on the P.C.H.A. petition. In addition to his ruling on the P.C.H.A. petition, the trial judge reaffirmed his rulings of July 18, 1957 and allowed the appellant to ap-

---

[1] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq.

peal from those rulings "as if such an appeal had been timely filed." The date of his order was May 8, 1969. Appellant again failed to file an appeal within the appropriate time and on March 23, 1971 filed a Petition for Allowance of an Appeal, nunc pro tunc. On April 7, 1971 we granted that petition.

We will discuss only one of the two objections raised by the appellant since we believe it has merit and requires a new trial.[2]

The appellant objects to certain comments that the District Attorney made in his final speech to the jury. During that summation, the District Attorney implied that the appellant had attempted to deceive the jury intentionally as to the circumstances of his discharge from the United States Army and that the jury therefore could infer that the self-defense plea was a similar deception.

These remarks were preceded by the following occurrences: During direct examination counsel for the appellant questioned his client extensively concerning his prior life. He brought out numerous prior juvenile and adult arrests as well as the circumstances surrounding appellant's dishonorable discharge from the service. On cross-examination, the District Attorney referred to the fact that appellant had an honorable discharge pin in the buttonhole of the suit he was wearing. Appellant explained that the suit had been borrowed and that the buttonhole was sewn in such a manner that he was unable to remove the pin prior to entering the courtroom. At this point, the following colloquy ensued: "Q. [District Attorney]: You can't get it off? A. [Appellant]: No. Q. Why can't you? A. It won't come off, the button hole is sewed up. Q. It won't come off,

---

[2] The other objection related to a portion of the charge to the jury, and, since a new trial is being ordered, we see no purpose in discussing that issue here.

the button hole is sewed up, so you wore that so the jury might get the impression, did you—A. No. I didn't—Q. —that you were a soldier—[Counsel] : No, that isn't true, your Honor—[District Attorney] : Now, just a moment. THE COURT: He has a right to ask him that question. [Counsel] : But he has already testified, your Honor, that he was dishonorably discharged. [District Attorney] : That's right, but he's still wearing that honorable discharge button—THE COURT: Just a minute, gentlemen. All right, we say the question is proper, you can ask the question. We overrule the objection. EXCEPTION NOTED." (Trial Transcript 306-307) Not being content with the unfavorable inference that might have been drawn from the foregoing, the District Attorney during his summation again referred to the subject and suggested to the jury that there was a deliberate attempt to deceive them as to appellant's discharge from the service and therefore as to his plea of self-defense.

This Court has repeatedly recognized that the prosecutor's unique position as both an administrator of justice and an advocate gives him a responsibility not to be vindictive or attempt in any manner to influence the jury by arousing their prejudices. *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971) ; *Commonwealth v. Toney*, 439 Pa. 173, 266 A. 2d 732 (1970) ; *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 (1927). In *Commonwealth v. Cicere*, 282 Pa. 492, 495, 128 A. 446, 447 (1925), we stated that "the district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice ; . . ."

More specifically, the District Attorney must limit his statements to the facts in evidence and legitimate inferences therefrom. *Commonwealth v. Meyers, supra ; Commonwealth v. Hoffman*, 439 Pa. 348, 266 A. 2d 726

(1970). The ABA Standards Relating to the Prosecution Function state: "It is unprofessional conduct for the prosecutor to intentionally misstate the evidence or mislead the jury as to the inferences it may draw. . ." ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function §5.8a (Prosecution Function) (Approved Draft 1970) at 126-128.

The record in this case is devoid of any evidence in the possession of the District Attorney that could reasonably allow him to conclude that the appellant's explanation for the presence of the pin was other than as stated. To the contrary, the appellant's admission that he had received a dishonorable discharge prior to any mention of the pin tends to corroborate his explanation. In any event, the Court permitted the prosecution on cross-examination to call attention to the pin, to appellant's wearing of the pin, and to the inference that appellant wore the pin to deceive the jury. Certainly there was no justification for him to have pursued the matter beyond that point. In so doing, he exceeded the limits of fair comment upon the evidence. While a prosecutor, in order to present the Commonwealth's case in the most favorable light, may make *fair* deductions and suggest to the jury *appropriate* inferences *from the evidence*,[3] a society cannot permit its agent to attempt to prejudice the minds of the jury against the accused by making wholly unsupported inferences that the accused deliberately deceived the jury. *Commonwealth v. Potter,* supra; *Commonwealth v. Meyers,* supra. It is our belief that the unfounded statements by the District Attorney in this case had the unavoidable effect of unfairly prejudicing the jury against the appellant.

---

[3] See, e.g., *Commonwealth v. Hoffman,* supra; *Commonwealth v. Meyers,* supra.

The judgment of sentence is reversed and a new trial ordered.

Mr. Chief Justice JONES and Mr. Justice POMEROY dissent.