J. S03001/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
              v.             :
                             :
ERIC WATSON,                 :       No. 322 EDA 2014
                             :
           Appellant         :

Appeal from the Judgment of Sentence, December 16, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0012373-2012

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
              v.             :
                             :
ERIC WATSON,                 :       No. 323 EDA 2014
                             :
           Appellant         :

Appeal from the Judgment of Sentence, December 16, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0012374-2012

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 18, 2016**

Eric Watson appeals from the December 16, 2013 judgment of

sentence following his convictions of aggravated assault, recklessly

endangering another person,[1] and fleeing or attempting to elude a police officer.[2]  We affirm.

The trial court provided the following factual history:

> Trial began on August 7, 2013.  At trial, Defendant was represented by Gary S. Silver, Esquire and the Commonwealth attorney was Kevin Harden, Esquire.  During the Commonwealth's opening statement, defense counsel objected to the prosecutor's reference to the arresting officers recovering a small packet that had fallen from the area of Defendant's person.  The Commonwealth's attorney specifically said, "(Defendant) almost seriously injured Officer Allen over one pack of heroin."  Defense counsel argued that allowing evidence of the drugs would be unfairly prejudicial to the Defendant.  The prosecutor responded that the evidence should be admitted as evidence of motive as to why the Defendant acted in the manner that he did.  This Court ruled that the admission of the evidence was effectively an untimely motion in limine made by the Commonwealth during trial, and granted the motion, thereby overruling defense counsel's motion.  Additionally, this Court ruled that defense counsel was allowed to argue to the jury that the charge of intentional possession of a controlled substance was discharged at the preliminary hearing due to lack of evidence.  In addition, a curative instruction was read twice to the [jury], once upon re-entering the courtroom after the objection and again at the close of trial.  Defense counsel then motioned for a mistrial, on the grounds that the evidence was unfairly prejudicial to the Defendant, and this Court denied the motion.

---

[1] The Commonwealth charged appellant with two counts of recklessly endangering another person, with one count at CP-51-CR-0012373-2012 and the other count at CP-51-CR-0012374-2012.  All other charges against appellant were filed at CP-51-CR-0012373-2012.

[2] 18 Pa.C.S.A. §§ 2702, 2705, and 75 Pa.C.S.A. § 3733, respectively.

The Commonwealth called Officer Santos Higgins ("Higgins") to testify first. Higgins testified he had been a Philadelphia Police Officer for 8 years, and had been assigned to the 17th District since he graduated from the academy. On June 29, 2012, Higgins was assigned to patrol in the 17th District with his partner, Officer Samuel Allen ("Allen") and Officer Joseph Marrero ("Marrero") as part of a marked RPC unit known as 17 Tac One. Higgins testified that the patrol vehicle was proceeding westbound on the 1500 block of Reed Street when he saw Defendant, driving a blue minivan, come from the 1400 block of South Hicks Street and then turn onto the 1500 block of Reed Street. Higgins stated that when Defendant turned, he disregarded a stop sign. The officers pulled Defendant over at the 1600 block of Reed Street, at which point Higgins and Allen approached the vehicle. Higgins further testified that he became suspicious when Defendant was seen moving around in the vehicle after he had been pulled over.

Higgins testified that he approached the car from the passenger side, and ordered Defendant to roll down his window. Defendant did not roll down the window initially, but instead stared straight ahead in silence. Eventually, Defendant rolled down the window about a quarter of an inch on the driver's side and unlocked the doors, at which point Higgins opened the passenger door and Allen opened the driver's door. Higgins testified Allen began to speak with Defendant, and Higgins recalled Defendant only asking "why?" in response. Higgins stated that in his opinion, Defendant did not seem to be intoxicated or suffering from a medical condition at the time. Higgins testified Defendant had a cell phone on his lap, and Allen ordered him to turn it off. At that time, he observed Defendant grabbing the gearshift and steering wheel, and hitting the gas. Higgins testified Allen was pinned between the door of the vehicle and the doorframe, and held onto the vehicle as it moved. Higgins testified that he then stepped into the car through the open door on the passenger side. Once in the car, Higgins drew his firearm on

Defendant and ordered him to stop the car, which he did. Higgins then pulled the key out of the vehicle.

The Commonwealth's next witness was Marrero. Marrero testified that he had been assigned to the 17th District for approximately 4 years. Marrero testified that on the night of June 29, 2012, he was on patrol with Higgins and Allen. Marrero stated that when Defendant was stopped, he remained in the patrol vehicle to run Defendant's vehicle's license plate number on the mobile data terminal while Higgins and Allen approached the Defendant. Marrero testified that he overheard Allen asking Defendant multiple times to roll down his window and turn off his cell phone, to which Defendant only said "no" in response. Marrero testified that he saw Defendant's vehicle suddenly move forward with Higgins being dragged along the blacktop and Allen pinned between the door and the doorjamb of the vehicle. Marrero stated that he saw that Higgins was able to regain his footing and jump into the car, after which it came to a stop about 20-30 feet from where it had been initially pulled over. Marrero and Allen then pulled Defendant from his vehicle and arrested him. Marrero testified that he saw something fall from Defendant's area after Defendant was pulled from the car. He then told Allen that he had seen a small object fall from Defendant.

The third and final witness for the Commonwealth was Allen. Allen testified that he had been assigned to the 17th District for the entire 5½ years he had been a Philadelphia Police Officer. On the night of June 29, 2012, Allen had been assigned to 17 TAC One as the driver of the patrol vehicle. Allen testified that the patrol vehicle was heading westbound on the 1500 block of Reed Street, at which point he observed a blue minivan driven by Defendant traveling northbound on the 1400 block of Hicks Street. The minivan then turned westbound onto the 1500 block of Reed Street, disregarding a stop sign in the process. Allen stated that after the minivan proceeded to the 1600 block

of Reed Street, he signaled for Defendant to pull over, which Defendant did. Allen testified that he shined a spotlight into Defendant's minivan, where he observed Defendant reaching towards the back of the vehicle, but could not see if Defendant was touching anything.

Allen testified he approached Defendant's minivan on the driver's side, and knocked on the window indicating for Defendant to roll down the window. Allen stated Defendant refused to do so, but did not say anything. Allen testified that he again asked Defendant to roll down the window and unlock the door, and Defendant eventually complied. Allen testified that after Defendant rolled down the window and unlocked the door, he opened the door in order to better see what Defendant was doing. At that point, Allen noticed that there was a cell phone on Defendant's lap with an open call. Allen testified he asked Defendant to turn the phone off and to shut off the car, but Defendant did not do so. Allen stated that Defendant then put the car into gear and drove. Allen testified that when Defendant pulled away, the door closed on him, and he held on to the door and the doorjamb. Allen stated that, although he was not injured by Defendant's actions, he was afraid of being dragged underneath the car or smashed between Defendant's vehicle and another car which was parked about 10-15 feet ahead of Defendant's vehicle.

Allen testified that he recovered something from the scene, and defense counsel objected to the testimony. In a sidebar discussion, this Court ruled that the Commonwealth could allow the witness to testify that there was a recovery of narcotics, and then reminded defense counsel that they were allowed to explain to the jury that the charge was dismissed. When the jury was brought back into the courtroom, Allen testified that he recovered a blue glassine packet containing an off-white powder that was alleged to be heroin near the Defendant's vehicle. On cross-examination, the defense did not further inquire about the drugs or question the

witness about the fact that the charge had been discharged due to lack of evidence. The Commonwealth then rested, and Defense rested.

During his closing statement, defense counsel raised the issue of the drugs that were allegedly found at the scene. He informed the jury that there were no charges related to drugs at this trial because another judge had discharged the drug offense. In response to the argument that the drugs could be used to explain motive on the part of the Defendant, defense counsel argued since the matter was discharged for lack of evidence, there could be no motive for something not in existence.

Trial court opinion, 8/22/14 at 3-7 (citations omitted).

The trial court also provided the following procedural history:

On June 29, 2012, Defendant was arrested and charged with aggravated assault, fleeing or attempting to elude an officer, and two counts of recklessly endangering another person ["REAP"].

On August 7 to August 9, 2013, a trial was held in the presence of a jury. On August 9, 2013, Defendant was found guilty on all charges. On December 16, 2013, this Court sentenced Defendant to 2 to 5 years state incarceration [] plus 5 years reporting probation on the aggravated assault charge, 1 to 2 years state incarceration on the charge of fleeing or attempting to elude an officer to run concurrently with the aggravated assault charge, 1 to 2 years state incarceration on the first charge of REAP (CP-51-CR-0012373-2012) to run concurrently with the aggravated assault charge, and 11½ to 23 months incarceration on the second REAP charge (CP-51-CR-0012374-2012) to run consecutively to the aggravated assault charge, for a total aggregate sentence of 3½ to 7 years state incarceration.[3] As

---

[3] We note that appellant's aggregate sentence is no less than two years, eleven and one half months and no more than six years, eleven months. (**See** notes of testimony, 12/16/13 at 39.)

a condition of this Court's sentence, Defendant was ordered to undergo random urinalyses, to obtain drug treatment while in jail and to seek and maintain employment upon release.

On December 23, 2013, Defendant filed a Motion for Reconsideration through counsel. On January 15, 2014, Defendant filed a Notice of Appeal to Superior Court.[4] On June 9, 2014, after receiving all of the notes of testimony, this Court ordered Defense counsel to file a Concise Statement of Errors Complained of on Appeal [p]ursuant to Pa.R.A.P. 1925(b) by June 30, 2014. On June 25, 2014, Mr. Gary Silver, Esquire, requested to withdraw as counsel for Defendant and requested an extension of time to file the Concise Statement of Errors. On June 26, 2014, this Court ordered that Mr. Silver be withdrawn as counsel for Defendant and granted new counsel thirty days following appointment to file the 1925(b) Statement. Mr. Douglas Earl, Esquire, was then appointed as counsel for Defendant and given until July 30, 2014 to file the 1925(b) Statement of Errors, which counsel did so on that date.

*Id.* at 2-3 (footnote omitted).

On August 22, 2014, this Court filed an opinion responding to the issues raised in the Concise Statement of Errors filed July 30, 2014. On September 8, 2014, Defendant, through counsel, filed a petition with the Superior Court seeking remand to add supplemental issues. On November 10, 2014, the Superior Court remanded the case and instructed counsel to file a Supplemental Concise Statement of Errors within 21 days, and defense counsel did so on December 1, 2014.

---

[4] Although the present appeal appears to be premature, in response to a rule to show cause by this court, appellant's counsel supplied a copy of the praecipe for entry of order denying post sentence motions by operation of law. We will therefore "regard as done what should have been done," and consider the appeal as timely filed.

Supplemental trial court opinion, 12/8/14 at 2-3. The trial court, pursuant to Pa.R.A.P. 1925(a), provided a supplemental opinion in response to appellant's supplemental concise statement of errors complained of on appeal on December 8, 2014.

Appellant initially raises the following issues for our review:

1. Did the trial court abuse its discretion by refusing to declare a mistrial after the prosecutor's improper reference in his opening statement to Defendant's alleged drug activity?

2. Even if a mistrial were not warranted, did the trial court abuse its discretion by holding that the Commonwealth was allowed to elicit testimony relative to the alleged drugs found at the scene, even though the court acknowledged that the prosecutor failed to provide reasonable notice of his intent to use this evidence, and even though the probative value of the evidence was outweighed by its prejudicial effect?

Appellant's brief at 4.

Appellant raises the following additional issues for review in his supplemental Rule 1925(b) statement:

a. The evidence was insufficient to support Defendant's conviction for aggravated assault because there was insufficient evidence to establish that Defendant attempted to cause or intentionally or knowingly caused bodily injury to any of the officer-complainants in question;

b. The evidence was insufficient to support Defendant's convictions for recklessly endangering another person because there was insufficient evidence to establish that

> > Defendant engaged in conduct that placed anyone in danger of death or serious bodily injury; and,
>
> > c. The evidence was insufficient to support Defendant's conviction [for] fleeing or evading a police officer because there was insufficient evidence to establish that Defendant fled from the police.

Appellant's supplemental Rule 1925(b) statement, 12/1/14 at 2.[5]

In his first issue for our review, appellant alleges prosecutorial misconduct. Specifically, appellant avers that the Commonwealth referenced a bag of heroin that was allegedly in appellant's possession at the time of his arrest and that the trial court erred in denying appellant's request for a mistrial. (**See** appellant's brief at 10.)

> With regard to the denial of mistrials, the following standards govern our review:
>
> > In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but,

---

[5] Appellant failed to include any of the three issues raised in his supplemental Rule 1925(b) statement in his brief. As a result, appellant waives these issues on appeal, and we will not review them on the merits. **See Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014), **cert. denied**, 135 S.Ct. 1405 (2015) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him" (citation and internal brackets omitted)).

> equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa.Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" *Id.* at 878 (citations omitted).

When reviewing a claim of prosecutorial misconduct, we use the following standard of review:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

***Commonwealth v. Bedford***, 50 A.3d 707, 715-716 (Pa.Super. 2012) (***en banc***), ***appeal denied***, 57 A.3d 65 (Pa. 2012) (citations omitted). ***See also Commonwealth v. Robinson***, 877 A.2d 433, 441 (Pa. 2005) (prosecutorial misconduct does not occur unless the jurors form a fixed bias and hostility toward the defendant based on the prosecutor's comments). This court has held that any taint from a prosecutor's improper statements may be cured by a curative instruction to the jury, and that courts are compelled to consider "all surrounding circumstances before finding that curative instructions [are] insufficient and the extreme remedy of a mistrial is required." ***Commonwealth v. Bracey***, 831 A.2d 678, 682 (Pa.Super. 2003), ***appeal denied***, 844 A.2d 551 (Pa. 2004) (citations omitted). A jury is presumed to have followed instructions provided by the trial court. ***Commonwealth v. Elliott***, 80 A.3d 415, 445 (Pa. 2013), ***cert. denied***, 135 S.Ct. 50 (2014), citing ***Commonwealth v. DeJesus***, 860 A.2d 102, 111 (Pa. 2004).

Appellant relies heavily on ***Commonwealth v. Satzberg***, 516 A.2d 758 (Pa.Super. 1986), in which this court found that the lower court had erred by denying the defendant's motion for a mistrial. In ***Satzberg***, "the assistant district attorney during his opening remarks referred to [the defendant] as a 'bum,' and said [the defendant] 'did nothing for two and a half years except to do drugs.'" ***Id.*** at 762.

In finding in favor of the defendant in **Satzberg**, this court stated,

> The prosecutor's statements about [the defendant's] drug habits effectively prejudiced the jury against [the defendant,] especially with the present media and political focus on the dangers inherent in drug use. During the entire trial, the jury heard the evidence with the knowledge that the prosecution believed [the defendant] to be a heavy drug user. Furthermore, the assistant district attorney's description of appellant as a "bum" interjected into the case his personal views about [the defendant.] During a trial, a prosecutor's personal opinions about a defendant are inappropriate since such statements are fundamentally inconsistent with a prosecutor's role as an administrator of justice. **Accord Commonwealth v. Evans**, 479 Pa. 100, 103, 387 A.2d 854, 855 (1978).

**Id.** Appellant also cites **Commonwealth v. Vazquez**, 617 A.2d 786, 788 (Pa.Super. 1992), in which this court held that a curative instruction for the jury was insufficient to cure the prejudice from a Commonwealth's witness' remarks regarding "lists of known drug dealers." Specifically, the court stated that the purpose of the witness' reference to "lists of known drug dealers" was "to convince defense counsel and/or the jury of the certainty of the identification by supporting it through reference to something arguably not susceptible to human error, **i.e.**, a computer list of `**known** drug dealers.'" **Id.** (emphasis in original).

Both of these cases are distinguishable from the instant appeal. First, the Commonwealth's attorney did not insert his own personal views about appellant into his opening statement. The relevant statement from the Commonwealth's opening statement is as follows:

> [Officer Marrero] comes and as they're pulling this defendant out of the vehicle, he noticed something fall so he tells Officer Allen something fell, but he's handcuffing this defendant with Officer Higgins, so Officer Allen, after he gets himself together, he goes right there to that door area where they pulled the defendant out of the vehicle and he almost seriously injured Officer Allen over one pack of heroin.

Notes of testimony, 8/7/13 at 30. Second, unlike **Vasquez**, there was no claim made to the jury that could "arguably be [insusceptible] to human error," that could not be cured with a curative instruction. When denying appellant's motion for a mistrial, the trial court made the following curative instruction to the jury:

> Good afternoon, ladies and gentlemen. When we ended earlier today, there was an objection by defense, I'm going to overrule the objection, and I'm going to give you a cautionary instruction about what you have heard in terms of the Commonwealth's opening statement.
>
> You heard the Commonwealth's opening statement indicating the defendant was in possession of a controlled substance for which he is not on trial here today. This argument is before you for a limited purpose. That is for the Commonwealth's purpose of tending to show that there was no mistake at the time the defendant was engaged in the activities related to the vehicle.
>
> This argument must not be considered by you in any way other than for the purpose I just stated. You must not regard this argument as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

***Id.*** at 77.  Before releasing the jury to begin its deliberations, the trial court provided another curative instruction:

> You have heard evidence tending to prove that the defendant was in possession of a controlled substance.  This evidence is before you for a limited purpose, that is, for the purpose to show motive.  This evidence must not be considered by you in any other way other than for the purpose I just stated.  You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

Notes of testimony, 8/9/13 at 132-133.  As noted above, the jury is presumed to follow any curative instruction it receives from the trial court. ***See Elliott***, 80 A.3d at 445.

Moreover, in order for a claim of prosecutorial misconduct to be successful, "the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." ***Robinson***, 877 A.2d at 441, quoting ***Commonwealth v. Paddy***, 800 A.2d 294, 316 (Pa. 2002) (citation omitted).

Here, appellant has failed to establish that the unavoidable effect of the Commonwealth's attorney's statement prejudiced the jurors and formed a fixed bias and hostility toward appellant in the minds of the jurors, and that such a fixed bias or hostility impeded their ability to objectively consider

the evidence and return a true verdict pursuant to **Robinson**. We, therefore, find that appellant's first issue is without merit.

In his second issue, appellant avers that the trial court abused its discretion by permitting the Commonwealth to "elicit testimony relative to the alleged drugs found at the [crime] scene." (Appellant's brief at 7.) Specifically, appellant alleges that the Commonwealth did not provide reasonable notice of its intentions to present evidence of a packet of heroin having allegedly been found in appellant's possession and that the trial court erred by permitting the Commonwealth's witnesses "to testify that they recovered 'a small object' and a 'blue glassine packet containing an off-white powder which was alleged heroin' from the ground where [appellant] was arrested." (**Id.** at 13-14.)

When reviewing a lower court's decision to admit evidence, we are held to the following standard:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence

> is inadmissible on account of its prejudicial impact.
>
> ***Commonwealth v. Weakley***, 972 A.2d 1182, 1188 (Pa.Super. 2009) (quoting ***Commonwealth v. Reid***, 571 Pa. 1, 811 A.2d 530, 550 (2002)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** at 1188-89 (citing ***Commonwealth v. Carroll***, 936 A.2d 1148, 1152-53 (Pa.Super. 2007)). "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." ***Id.*** (quoting ***Commonwealth v. Viera***, 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995)).
>
>> The threshold inquiry with admission of evidence is whether the evidence is relevant. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." ***Commonwealth v. Spiewak***, 533 Pa. 1, 617 A.2d 696, 699 (1992). In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. ***Commonwealth v. Story***, 476 Pa. 391, 383 A.2d 155, 160 (1978).
>
> ***Commonwealth v. Stokes***, 78 A.3d 644 (Pa.Super.2013) (internal citations modified for uniformity); ***see also*** Pa.R.E. 401; 402; 403.

***Commonwealth v. Antidormi***, 84 A.3d 736, 749-750 (Pa.Super. 2014),

***appeal denied***, 95 A.3d 275 (Pa. 2014).

This court has addressed Pa.R.E. 404(b)(3)'s notice requirement.

> "In criminal cases, the prosecution shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Pa.R.E. 404(b)(4). The purpose of this rule "is to prevent unfair surprise, and to give the defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." Pa.R.E. 404, cmt. However, there is no requirement that the "notice" must be formally given or be in writing in order for the evidence to be admissible. ***Commonwealth v. Mawhinney***, 915 A.2d 107, 110 (Pa.Super. 2006)[, ***appeal denied***, 932 A.2d 1287 (Pa. 2007)].

***Commonwealth v. Lynch***, 57 A.3d 120, 125-126 (Pa.Super. 2012), ***appeal denied***, 63 A.3d 1245 (Pa. 2013). The ***Lynch*** court also stated that the defendant was afforded sufficient notice when he was provided with pretrial discovery, "which included [a witness'] statements referring to Lynch's conduct over the last five years." ***Id.*** at 126.

Here, the Commonwealth provided adequate notice to appellant and his trial counsel regarding the reference of the packet of heroin allegedly in his possession. It is undisputed that the Commonwealth included the evidence of a packet of heroin in the pretrial discovery provided to the defense. (Commonwealth's brief at 10; appellant's brief at 15.) Therefore, because the Commonwealth notified the defense that it intended to use the evidence at trial during pretrial discovery, we find that the Commonwealth provided adequate notice to the defense.

We now turn to whether the evidence of appellant allegedly possessing a packet of heroin was properly admitted under Pa.R.E. 403. We agree with the trial court's analysis that the evidence's probative value outweighs its prejudicial value, and is therefore admissible. As set forth by the trial court:

> Here, the evidence of heroin found at the scene was highly probative of the Defendant's motive to commit the charged crimes. The Commonwealth argued that if the Defendant were in possession of a controlled substance at the time he was stopped by the police, then that would provide a motive for him to attempt to drive away from Officers Allen and [Higgins]. Furthermore, this evidence was probative of an absence of mistake in the Defendant's actions, as it tended to show that the Defendant acted in accordance with a motive to escape as opposed to accidentally moving his car forward. As discussed above, the evidence was not unduly prejudicial to the Defendant, and any prejudicial effect was ameliorated by the Court providing cautionary instructions to the jury after ruling on the objection and again at the close of the case. Thus, this Court committed no error in allowing evidence of heroin found at the scene to show Defendant's motive and to show that there was an absence of mistake.

Trial court opinion, 8/22/14 at 11-12. We find that the evidence was properly admitted under Pa.R.E. 403, and the trial court did not abuse its discretion by admitting the evidence of appellant allegedly possessing a packet of heroin.

Judgment of sentence affirmed. Appellant's application to submit a reply brief is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016